## APPEAL OF NATIONAL PNEUMATIC CO.

Docket No. 3651.   Decided November 26, 1926.

The cash value of patents paid in for shares of stock of a corporation determined.

*John F. McCarron*, Esq., *George E. Hamilton*, Esq., *Philip Stein*, Esq., and *Albert I. Coe*, C. P. A., for the petitioner.
*Ward Loveless*, Esq., for the Commissioner.

This is an appeal from the determination of deficiencies in income and profits tax as follows:

| Year | Deficiencies | Overassessments |
|------|-------------:|----------------:|
| 1915 | $556.51 | |
| 1916 | 375.56 | |
| 1917 | | $42,220.50 |
| 1918 | 119,432.82 | |
| 1919 | 22,218.12 | |
| 1920 | | 4,655.74 |
| Total | 142,583.01 | 46,876.24 |

The issues presented by this appeal are:

(1) Valuation of the assets acquired by the petitioner at the time of organization for invested capital purposes.

(2) Valuation of capital stock of the Prepayment Car Sales Co. as of 1911, the date acquired in exchange for other assets.

(3) Valuation of the patents as of March 1, 1913, for depreciation purposes.

(4) The profit realized, if any, in 1911, on the sale of certain assets to the Prepayment Car Sales Co. for stock of that company. This profit, if any, affects the computation of the war-profits credit in 1918.

(5) A determination of the proper deduction from invested capital on account of inadmissible assets.

(6) Loss sustained on the sale of Prepayment Car Sales Co. stock in 1918.

(7) Whether the petitioner is entitled to a determination of its profits tax for the year 1918 under the provisions of section 328 of the Revenue Act of 1918.

Petitioner's allegation of error with respect to the computation of the allowance for amortization for 1918 was withdrawn at the hearing.

## FINDINGS OF FACT.

Since the questions are numerous and the facts involved are detailed, the facts will be subdivided by appropriate headings to correspond with the questions presented.

1. *Valuation of assets acquired at date of organization.*—The petitioner was incorporated February 2, 1910, with an authorized capital stock of $500,000, divided into 5,000 shares of a par value of $100 each, for the purpose of taking over certain patents owned principally by J. B. Burdett and Harold Rowntree, or by corporations whose stock was principally owned by them, and shares of capital stock of corporations either owned by them or in which they were principally interested. There were five incorporators, each of whom first paid in to the petitioner $100 cash, for which each received one share of stock.

On April 9, 1910, Burdett and Rowntree entered into an agreement with the petitioner by which they, in full payment for 4,995 shares of petitioner's capital stock, agreed to cause to be sold, assigned, transferred and set over to the petitioner:

(1) Eighteen patents, principally on door devices then owned by Burdett-Rowntree Manufacturing Co.

(2) Twenty-one patents or applications for patents, among which were a number relating to pneumatic door-operating devices.

(3) Certain contracts as follows: (a) Contract pertaining to door safety devices made between the Burdett-Rowntree Manufacturing Co., and James S. Doyle, dated July, 1909; (b) contract pertaining to an air trap device, made between Burdett-Rowntree Manufacturing Co., and George M. Spencer, dated June 1, 1909; (c) contract pertaining to door devices made between the Burdett-Rowntree Manufacturing Co., and H. C. Randall, dated October 8, 1909.

(4) Four air brake patents owned by Harold Rowntree.

(5) Two applications for air brake patents owned by Harold Rowntree.

(6) The entire capital stock then issued and outstanding ($92,500 par value) of the Pay-Within Car Co., but with the proviso that the then stockholders of that company should have and retain all of the cash on hand, bills and accounts receivable, or devices as the same existed February 1, 1910, and that it should also complete such contracts at its own expense; that they should also discharge all of the bills and accounts payable and obligations of the company as they existed February 1, 1910. It was further provided that the capital stock of The Pay-Within Car Co., so sold, assigned, transferred and set over to the petitioner should carry: (a) All letters patent owned by said The Pay-Within Car Co.; (b) all agreements relating to patents, or interests therein, or licenses thereunder, of

said The Pay-Within Car Co.; (c) all contracts made by said The Pay-Within Car Co. for furnishing or installing machinery or devices on and after February 1, 1910. The letters patent thus referred to were six in number.

(7) Six hundred and thirty-three shares of the capital stock of the Chicago Welding Co., the entire capital stock of which then issued and outstanding was 1,000 shares of a par value of $100 each. The petitioner further agreed to purchase for $4,000, the remaining 367 shares of the capital stock so that the petitioner should then own the entire capital stock of that company.

(8) Seventeen thousand, seven hundred and fifty dollars cash.

The agreement also provided in Article IX, in part, as follows:

(a) As a part of this transaction the National Pneumatic Company shall pay all expenses of prosecuting the applications for patents, hereinbefore mentioned and described, and of the issue of Letters Patent thereon, incurred from and after February 1, 1910.

(b) As a part of this transaction the National Pneumatic Company shall enter into a contract with the Burdett-Rowntree Manufacturing Company (which contract we will procure the Burdett-Rowntree Manufacturing Company to execute), providing for the manufacture by said Burdett-Rowntree Manufacturing Company, of all machinery and devices hereafter sold, furnished or installed by said National Pneumatic Company, its agents, sub-contractors or licensees, such contract to be substantially in the form of contract submitted herewith.

(c) As a part of this transaction the National Pneumatic Company shall, if required by the Electric Service Supplies Company, enter into a contract with that Company and also enter into contracts J. B. Burdett, Harold Rowntree, Paris R. Forman, and Frank T. Johnson, respectively (which contracts we will procure to be executed by the individuals above mentioned, respectively), all such contracts to be respectively in substantially the form of contracts submitted herewith.

(d) As a part of this transaction the National Pneumatic Company, having acquired the entire capital stock of the Chicago Welding Company, as hereinbefore set forth, shall procure and cause the Chicago Welding Company to sell and deliver to the Burdett-Rowntree Manufacturing Company, and the Burdett-Rowntree Manufacturing Company shall purchase from the Chicago Welding Company, (and we will procure the Burdett-Rowntree Manufacturing Company to so purchase) the entire manufacturing plant, including tools, machinery and appliances and the stock of material manufactured and in process of manufacture of said Chicago Welding Company at its present fair cash value, such fair cash value to be fixed and determined by the undersigned J. B. Burdett and W. G. McCune.

The cash received by the petitioner for its shares of stock was $18,250, which was duly recorded on its cash book. The remaining assets acquired were set up under a single item " Sundries," in the " Plant Account " carried on its general ledger.

The petitioner's capital stock was placed at $500,000, for the reason that the incorporators thought that was a fair price for the assets to be transferred to the corporation in exchange for its capital

stock. The incorporators agreed among themselves as to how the stock should be split up among the several owners of the assets to be transferred to the petitioner, and the stock which was issued to Burdett and Rowntree in the first instance was turned back to the corporation by them and certificates of stock were issued in accordance with such agreement. The several assets acquired and carried on the books under the title of "Sundries" in the plant account were not segregated until some time in 1917. The segregation then made was as follows:

| | |
|---|---:|
| Apr. 22, 1910—For cash, organizers | $500.00 |
| Apr. 22, 1910—For cash, per agreement | 17,750.00 |
| Apr. 22, 1910—For services under contract, (stock held in trust by taxpayer corporation) | 3,500.00 |

*In Plant Account.*

| | |
|---|---:|
| Apr. 22, 1910—For patents of Burdett-Rowntree Mfg. Co. | 240,000.00 |
| Apr. 22, 1910—For entire capital stock of Pay-Within Car Co. | 166,750.00 |
| Apr. 22, 1910—For capital stock of Chicago Welding Co. | 25,000.00 |
| Apr. 22, 1910—For air brake patents | 12,750.00 |
| Mar. 31, 1911  For foreign patents | 30,250.00 |
| Mar. 31, 1911  For two Pay-Within patents | 3,500.00 |

Prior to January 1, 1917, the petitioner did no manufacturing of its own; its income consisted of royalties, dividends and profits from subcontracting. On or after January 1, 1917, the corporation purchased machinery, tools and other equipment incidental to the manufacture of street car supplies and started operating as a manufacturing concern, along which lines it has directed its attention up to the present time.

In its tax returns for 1918 and 1919, the petitioner claimed as the actual value of the assets listed above, subject to the statutory limitations applicable, the amounts set out in the first column of the following tabulation. The amounts allowed by the Commissioner for such assets in his determination of deficiencies for those tax years are shown by the second column.

| | Taxpayer. | Commissioner. |
|---|---:|---:|
| Cash | $18,250 | $18,250.00 |
| (a) Patents of Burdett, Rowntree Mfg. Co. | 240,000 | 162,610.88 |
| (b) Entire capital stock of The Pay-Within Car Co. | 166,750 | 112,980.63 |
| (c) Capital stock of Chicago Welding Co. | 25,000 | 16,938.63 |
| (d) Air brake patents | 12,750 | 8,469.31 |
| (e) Foreign patents | 30,250 | None. |
| (f) Two Pay-Within car patents | 3,500 | None. |
| (g) Services under contract | 3,500 | None. |
| | 500,000 | 319,249.45 |

(a) *Actual cash value of patents of Burdett-Rowntree Manufacturing Co.*—The Burdett-Rowntree Manufacturing Co. was incor-

porated April 11, 1894. It acquired certain patents on opening and closing door devices for street cars, and in 1905 secured a contract from the Metropolitan West Side Elevated Railroad Co. in Chicago to equip certain of its cars with such devices. It secured contracts of a similar nature during succeeding years and in 1909 and 1910 was doing a large business along this line. In 1910 it had three distinct businesses; one was manufacturing various street car specialties of which the principal one was a pneumatic door-closing device for street cars; the second was the manufacture of pneumatic air closing devices for elevators or elevator doors; the third was the manufacture of electric dumb-waiters or package elevators. It had patents protecting its business in each line.

The Burdett-Rowntree Manufacturing Co. had a capital stock of $75,000 during the period 1905 to 1911, inclusive. The patents owned by it were not listed as an asset. Its tangible assets at the beginning of each year, its book income for such year, and the dividends paid during such year are shown by the following tabulation:

| Date | Tangible assets. | Fiscal period. | Book income. | Dividends paid. |
|---|---|---|---|---|
| Jan. 31, 1905 | $62,017.81 | Jan. 31, 1905 to Dec. 31, 1905. | $14,832.57 | $7,500 |
| Jan. 1, 1906 | 69,350.38 | 1906 | 47,551.63 | 30,000 |
| Jan. 1, 1907 | 88,282.40 | 1907 | 40,028.20 | 48,750 |
| Jan. 1, 1908 | 79,560.60 | 1908 | 42,041.51 | 30,000 |
| Jan. 1, 1909 | 91,602.11 | 1909 | 78,795.53 | 15,000 |
| Jan. 1, 1910 | 148,622.53 | 1910 | 146,477.74 | 80,000 |
| Jan. 1, 1911 | 187,026.32 | 1911 | 127,544.79 | 52,500 |

The following is a summary of gross contracts taken each year and the resulting profits therefrom, regardless of the year in which the contract was completed:

| | Gross contract price. | Profits on contracts. |
|---|---|---|
| **Street car work.** | | |
| Contracts taken in 1905 | $6,624.25 | $906.63 |
| "       "      " 1906 | 46,810.14 | 7,327.10 |
| "       "      " 1907 | 29,563.50 | 5,381.87 |
| "       "      " 1908 | 117,167.63 | 50,315.67 |
| "       "      " 1909 | 408,153.14 | 135,918.05 |
| **Elevator work.** | | |
| Contracts taken in 1905 | 105,742.36 | 38,359.38 |
| "       "      " 1906 | 56,938.98 | 18,515.08 |
| "       "      " 1907 | 33,738.76 | 7,600.67 |
| "       "      " 1908 | 51,266.53 | 16,747.08 |
| "       "      " 1909 | 43,979.51 | 12,888.21 |
| **Dumb-waiter work.** | | |
| Contracts taken in 1905 | 68,106.30 | 15,966.55 |
| "       "      " 1906 | 96,749.66 | 26,598.25 |
| "       "      " 1907 | 99,675.30 | 26,216.37 |
| "       "      " 1908 | 96,619.56 | 23,832.53 |
| "       "      " 1909 | 165,564.63 | 39,667.87 |

In the business of the Burdett-Rowntree Manufacturing Co., the corporation did the work of manufacturing as well as the work of installing. None of its contracts or tangible assets or patents relating to dumb-waiters were transferred to the petitioner. The value of the Burdett-Rowntree Manufacturing Co. patents acquired by the petitioner in exchange for its shares of stock was based largely upon the earnings attributable thereto.

The contracts taken by the Burdett-Rowntree Manufacturing Co. under its patents were based on a definite contract price and a predetermined estimate of cost. The cost of each contract was determined in advance from the nature and size of the contract and the known cost of material and shop labor, with a further percentage to cover all overhead charges, which percentage was based on the previous experience of the company. Upon the basis of such computation, the incorporators reached the conclusion that the Burdett-Rowntree Manufacturing Co. patents to be transferred to the petitioner had a value of $240,000. The books of account of the Burdett-Rowntree Manufacturing Co. show the sale of those patents at a price of $240,000.

The average remaining life of these patents at the time of their acquisition by the petitioner was 15 years. The Commissioner made his determination of a value of $162,610.88 for the patents upon the following: Earnings of the predecessor owner for the five-year period preceding the date of organization of the petitioner in excess of a fair return on the tangible assets was $37,356.11; he determined that 58 per cent of the earnings of the predecessor owner was attributable to the patents acquired by the petitioner. The value of the patents acquired was determined by taking the present worth of an annuity of $21,666.54 for 15 years discounted at the rate of 10 per cent, with provision for a 4 per cent sinking fund. By the use of Hoskold's tables, it was determined that such an annuity had a present worth of $162,610.88, and that figure was accepted as the value of the patents.

(b) *Capital stock of The Pay-Within Car Co.*—While the Burdett-Rowntree Manufacturing Co. was manufacturing its door devices for cars where the passenger entered at the end of the car, a "Pay-as-you-enter" car came into use, where fares were collected as the passenger passed by the conductor. Harold Rowntree thought he could make an improvement on that car and he, with a man named Lincoln, in Philadelphia, got out a patent on what they called the "Pay-Within" car. This car had doors on the side and these doors were operated by a mechanism which it was contemplated would be made by the Burdett-Rowntree Manufacturing Co. The

Pay-Within Car Co. was organized in 1908 and its business increased very rapidly. In 1910 it had an authorized capital stock of $100,000, only $92,500 of which was outstanding. For this capital the owners received $166,750 of the capital stock of the petitioner corporation. The Commissioner has allowed an actual cash value for this stock at the time acquired by the petitioner of $112,980.63. The basis for this determination is that, since 2,400 shares of stock were issued for the patents of the Burdett-Rowntree Manufacturing Co., which patents had a value determined to be $162,610.88, the value of each share was $67.7545; that this value, multiplied by 1,667½ shares issued to the owners of the capital stock of The Pay-Within Car Co., gives a value for the stock of $112,980.63.

At the time acquired by the petitioner, The Pay-Within Car Co. had but one asset, namely, patents. The previous stockholders were permitted to withdraw all cash, accounts and bills receivable, and contracts for furnishing or installing machinery or devices, as the same existed on February 1, 1910. They also assumed all indebtedness of the company existing on February 1, 1910.

The accounts of The Pay-Within Car Co. from November 1, 1908, to February 1, 1910, show the contracts acquired and completed with the profit derived therefrom, but do not include contracts acquired under the patents and in process of completion which were uncompleted on February 1, 1910. Such net income on work completed alone and tangible assets at the beginning of each year were as follows:

| Period. | Tangible assets at beginning of period. | Net income for period. |
|---|---|---|
| Nov. 1–Dec. 31, 1908 (2 months) | $1,000.00 | $3,883.41 |
| Jan. 1–Dec. 31, 1909 (12 months) | 4,883.41 | 18,515.88 |
| Jan. 1–Jan. 31, 1910 (1 month) | 11,024.76 | 13,208.87 |
| Total | | $35,608.16 |

The dividend record of the company shows as follows:

| | |
|---|---|
| September 20, 1909 | $4,518.05 |
| October 18, 1909 | 5,240.99 |
| December 31, 1909 | 2,620.49 |
| January 31, 1910 | 2,620.49 |
| Total | 15,000.02 |
| Liquidating dividend Feb. 1, 1910 (balance of surplus) | 20,608.14 |
| | 35,608.16 |

(c) *Capital stock of Chicago Welding Co.*—The Chicago Welding Co. had been recently started for acetylene welding and cutting, and it was believed that it might be a good thing in the street car business in the repair of castings and in making sheet iron specialties and things of that kind. Some of the stockholders of that company insisted upon receiving cash for their shares. This was the occasion for the provision that the petitioner should issue $25,000 par value of its capital stock for 633 shares of the capital stock of the Chicago Welding Co. and pay $4,000 cash for the balance of the shares. The Commissioner's determination of a value of $16,938.63 for the 633 shares of stock acquired is the same as that referred to as the basis for the determination of the value of the capital stock of The Pay-Within Car Co.

(d) *Air-brake patents.*—Rowntree owned four air-brake appliances upon which patents had been issued or for which applications were pending. The petitioner issued to Rowntree $50,000 par value of its capital stock for these patents. He donated all but $12,500 of this stock back to the corporation. These patents had never been used by Rowntree nor were they used by the petitioner after they had been acquired by it, but the incorporators believed that they had a trading value, inasmuch as the Burdett-Rowntree Manufacturing Co. sold some of its products to manufacturers of air brakes, and the ownership of these patents might be instrumental in retaining such business.

(e) *Rowntree patents—foreign.*—The petitioner issued $30,250 par value of its capital stock, donated to it by Rowntree, for foreign patents of Rowntree. The patents were never used by Rowntree and were never used by the petitioner. The Commissioner allowed no invested capital in respect of them.

(f) *Pay-Within car patents.*—The petitioner acquired two patents relating to the manufacture of Pay-Within cars, through Burdett and Rowntree. These patents were included in the sundries shown in petitioner's plant account and were set up in the segregation of the plant account at $3,500. The Commissioner found no value for the patents in his computation of invested capital.

(g) *Services under contract.*—The agreement made by Burdett and Rowntree with petitioner corporation on April 9, 1910, provided that petitioner corporation should enter into an agreement for the employment of one Hugh L. Adams, of Chicago, and that it should issue to him, in addition to the payment of a regular salary, certain shares of stock. To enable the petitioner to carry out the agreement, Burdett and Rowntree obligated themselves to turn over to the corporation the shares of capital stock necessary to pay Adams. Adams was employed under a contract for a term of 3½ years, with a provision that he should receive, as a bonus for each year of employ-

ment, ten shares of capital stock. He resigned from his position before the termination of the contract and only thirty shares of the stock were issued to him.

2. *Valuation of the capital stock of the Prepayment Car Sales Co. as of 1911, the date acquired, in exchange for their assets.*—On March 1, 1911, the petitioner exchanged 60.03 per cent of the patents acquired from the Burdett-Rowntree Manufacturing Co., and the patents (the only assets) of The Pay-Within Car Co., for 4,000 shares of the capital stock of the Prepayment Car Sales Co. Thereafter, The Pay-Within Car Co., although continuing its corporate existence, had no assets or income and transacted no business whatever. The entire capital stock of this company was $1,000,000, divided into 10,000 shares. The Commissioner determined that the cost to the petitioner of these 4,000 shares of stock was the value at date of acquisition by it of the assets turned over to the Prepayment Car Sales Co. for the shares, since the petitioner had shown no increase in value of such assets from the date acquired to March 1, 1911. The Commissioner used as the value of the capital stock of The Pay-Within Car Co. $112,980.63 (computed in the manner outlined above), and computed the cost and value of 60.03 per cent interest in the patents acquired from the Burdett-Rowntree Manufacturing Co. at 60.03 per cent of $162,610.88, the amount fixed by him as the value of the patents acquired from the Burdett-Rowntree Manufacturing Co. The Commissioner used as the March 1, 1913, value the cost at March 1, 1911. The cost of the stock at March 1, 1911, and the value at March 1, 1913, was computed as follows:

Value of capital stock of The Pay-Within Car Co_____ $112,980.63
Patents acquired from Burdett-Rowntree Mfg. Co., given as part
   consideration  (60.03%×$162,610.88) _____ 97,615.31
Value of stock of Prepayment Car Sales Co., at March 1, 1911, and
   March 1, 1913_____ 210,595.94

3. *Valuation of patents as of March 1, 1913, for depreciation purposes.*—The values of the patents at March 1, 1913, for purposes of determining depreciation deductible during the taxable years, were the values at the date of acquisition, less the exhaustion occasioned by the lapse of time from the date acquired to March 1, 1913. The patents had an average life of 15 years from February 1, 1910.

4. *The profit realized, if any, in 1911, on the sale of certain assets to the Prepayment Car Sales Co. for stock of that company.*—The cost of the 4,000 shares of stock of the Prepayment Car Sales Co. was the sum of (a) The value of the capital stock of The Pay-Within Car Co. at the date acquired by the taxpayer, plus (b) 60.03 per cent of the value of the patents of the Burdett-Rowntree Manufacturing Co. when acquired by the petitioner in February, 1910, less the proportionate exhaustion of the patents of the Burdett-Rowntree Man-

ufacturing Co. from February 1, 1910, to March 1, 1911, on the basis of a fifteen-year life.

5. *Determination of the proper deduction from invested capital on account of inadmissible assets.*—The nature of the petitioner's business is such that certain of its contracts extend over several years. The method employed in keeping its books of account is to charge the incurred costs of its uncompleted contracts to " Contract Construction Account." At intervals during the course of completion of contracts, bills are sent to its customers and entries are made charging "Accounts Receivable " and crediting " Contracts Private Account." Upon completion of the contract the " Contracts Construction Account " and " Contracts Private Account " are closed out and the difference credited to surplus. In preparing its balance sheets for the taxable years 1917 to 1920, inclusive, the petitioner showed as a liability the difference between the costs of the contracts and the amounts billed. The amounts billed and the incurred costs, as shown by the "Accounts Receivable " and " Contracts Private Account " at December 31 of each of the years 1917 to 1920, inclusive, were as follows:

| Date. | Amounts billed. | Incurred costs. |
|---|---|---|
| December 31, 1917 | $601,337.82 | $494,934.85 |
| December 31, 1918 | 853,619.11 | 605,620.82 |
| December 31, 1919 | 181,324.29 | 141,393.56 |
| December 31, 1920 | 813,305.11 | 704,856.73 |

The excess of the amounts billed over the amounts of the incurred costs at the close of each of the years 1917 to 1920, inclusive, is shown on the petitioner's balance sheets at the close of each year as a liability, with the descriptive title " Contracts in Process." Thus, the amount at December 31, 1920, is shown by the petitioner's balance sheet to have been $108,448.28.

6. *Loss sustained on the sale of Prepayment Car Sales Co. stock in 1918.*—In 1918 the petitioner sold its 4,000 shares of stock in the Prepayment Car Sales Co. for $5,000. The Commissioner determined that the petitioner sustained a loss of $210,595.94 on the sale.

#### OPINION.

SMITH: The principal point involved in this appeal is the value of assets acquired by the petitioner in exchange for its capital stock. No question of affiliation of the petitioner with the Burdett-Rowntree Manufacturing Co. is involved. The petitioner apparently never claimed affiliation with that company and no evidence as to the stock ownership of that company or of the petitioner is before us. Since

the questions are numerous they will be considered in the same order in which they are stated in the preliminary statement and in the findings of fact.

1. *Valuation of assets acquired at date of organization.*—(a) *Actual cash value of patents of Burdett-Rowntree Manufacturing Co.*—The Burdett-Rowntree Manufacturing Co. had been in existence since 1894 and was doing a large and profitable business in 1910. Although it was engaged in three lines of business, the largest and most profitable line was that connected with street car work. This work was secured by reason of the ownership of numerous patents. These patents, together with certain other patents and applications for patents, relating to elevator doors, etc., were transferred to the petitioner and eventually the petitioner issued for such assets $240,000 capital stock. Under the agreement of transfer the Burdett-Rowntree Manufacturing Co. was to continue to manufacture under its patents. The provisions of the contract were not introduced in evidence. The books of account of the Burdett-Rowntree Manufacturing Co. showed the sale of these assets for $240,000. The Commissioner determined that the actual cash value of these assets was $162,610.88. The basis of this determination is a capitalization of the earnings of the Burdett-Rowntree Manufacturing Co. attributable to the patents during a five-year period immediately preceding the date of transfer.

The findings of fact show a very large increase in volume of business of the company during the three years preceding 1910. Many of the contracts begun in 1908 and 1909 had not been completed at the date of transfer of the assets to the petitioner, and very large profits were realized by the Burdett-Rowntree Manufacturing Co. from the completion of such contracts. The Commissioner did not take into account these profits in determining the earnings attributable to the patents during the five-year period prior to February 1, 1910.

The petitioner contends that if the value of its patents is to be predicated upon its earnings, the earnings realized during the years 1910, 1911 and 1912, from the contracts in hand but uncompleted at the date of transfer, should be taken into consideration.

We are of the opinion that the contention of the petitioner upon this point is well founded. The contracts from which the Burdett-Rowntree Manufacturing Co. had a large income in 1910, 1911 and 1912 were attributable to the patents owned by it prior to February 1, 1910, and assigned to the petitioner in 1910.

No hard and fast rule can be laid down for determining the value of patents paid in for capital stock of a corporation. *Appeal of Gamon Meter Co.*, 1 B. T. A. 1124. The value is a question of fact in any case. *Appeal of J. J. Gray, Jr.*, 2 B. T. A. 672. See also *Appeals of*

*Saenger Amusement Co.*, 1 B. T. A. 96; *Dwight & Lloyd Sintering Co.*, 1 B. T. A. 179; *William H. Jackson Co.*, 2 B. T. A. 411.

In the instant case, the interested parties determined that the value of the assets to be transferred to the petitioner by the Burdett-Rowntree Manufacturing Co. was $240,000. We think that that determination is entitled to serious consideration. We are satisfied that the assets had a greater value than was placed upon them by the Commissioner, and from a consideration of the entire record we are of the opinion that $240,000 was not in excess of the cash value.

(b) *Capital stock of The Pay-Within Car Co.*—For the entire capital stock of The Pay-Within Car Co., the petitioner issued $166,750 of its capital stock. It claims that that was its actual cash value. It is true that The Pay-Within Car Co. had been in existence for only a short period, but its earnings during that period had been very large. There was a prospect that the business would continue to increase in the manner shown by the record of its earnings from November 1, 1908, to February 1, 1910. If those earnings should continue, the patents from which they arose had a very large cash value. We are of the opinion that the actual cash value was at least $166,750.

(c) *Capital stock of the Chicago Welding Co.*—The petitioner claims that the actual cash value of 633 shares acquired by it was $25,000, the par value of the shares of stock of the petitioner corporation issued therefor. It appears, however, that the petitioner was to acquire the remaining 367 shares for $4,000 cash. The Commissioner determined the actual cash value of the 633 shares to be $16,938.63. The evidence of record does not warrant a cash value in excess of $16,938.63.

(d) *Air-brake patents.*—The Commissioner determined the actual cash value of the air-brake patents to have been $8,469.31. In our opinion the evidence does not warrant a greater cash value.

(e) *Burdett-Rowntree patents—Foreign.*—Although these patents were placed upon the petitioner's books of account at a value of $30,250, the evidence shows that the patents were never used by the Burdett-Rowntree Manufacturing Co. and were never used by the petitioner. No evidence has been adduced which would warrant a finding that the patents had a cash value.

(f) *Pay-Within car patents.*—There is no evidence of record that would warrant any finding of fact that these patents had an actual cash value at the date of acquisition. In the absence of evidence the Commissioner's determination of no value must be approved.

(g) *Services under contract.*—The evidence shows that $3,000 par value of capital stock of petitioner was issued to Hugh L. Adams as compensation for services. All of his services were performed

prior to the tax years under consideration. The services were worth the par value of the capital stock issued therefor and the Board is of the opinion that the petitioner is entitled to invested capital in the amount of $3,000 in respect of such services paid for by capital stock.

2. *Valuation of the capital stock of the Prepayment Car Sales Co. as of 1911, the date acquired in exchange for their assets.*—At the hearing of this case it was stipulated as follows:

On March 1, 1911, the taxpayer acquired 4,000 shares of the capital stock of the Prepayment Car Sales Company, par value $100 per share. The consideration given for this stock was the patents of The Pay-Within Car Company and 60.03 per cent of the patents acquired by the taxpayer from the Burdett-Rowntree Manufacturing Company in February, 1910.

It is further stipulated that the Board may find that the cost of the 4,000 shares of stock of the Prepayment Car Sales Company was the sum of (a) the value fixed by the Board as the value of the capital stock of The Pay-Within Car Company at the date acquired by the taxpayer, plus (b) 60.03 per cent of the value fixed by the Board as the value of the patents of the Burdett-Rowntree Manufacturing Company when acquired by the taxpayer in February, 1910, less the proportionate exhaustion on the patents of the Burdett-Rowntree Maufacturing Company to March 1, 1911, on the basis of a fifteen-year life.

It is further stipulated that the value so fixed shall be accepted both as the cost and the March 1, 1913, value of the said 4,000 shares of capital stock of the Prepayment Car Sales Company.

In accordance with the stipulation, it is found that 60.03 per cent of the value of the patents acquired from the Burdett-Rowntree Manufacturing Co. was $144,072; that the exhaustion of the interest in the patents to March 1, 1911, amounted to $10,405.20, and that the cost and the March 1, 1913, value of the 4,000 shares of capital stock of the Prepayment Car Sales Co. was $300,416.80.

3. *Valuation of patents as of March 1, 1913, for depreciation purposes.*—It was stipulated by and between counsel for the petitioner and counsel for the Commissioner that the values of the patents that were determined by the Board might be accepted as the March 1, 1913, values, less the exhaustion occasioned by the lapse of time from the date acquired to March 1, 1913.

4. *The profit, if any, realized in 1911 on the sale of certain assets to the Prepayment Car Sales Co. for stock of that company.*—It was originally the contention of the petitioner that it realized a profit in 1911 upon the sale of certain assets to the Prepayment Car Sales Co. for stock of that company. This contention was withdrawn at the hearing and is covered by the stipulation referred to above under " Valuation of the capital stock of the Prepayment Car Sales Co. as of 1911 * * *."

5. *Determination of the proper deduction from invested capital on account of inadmissible assets.*—Section 326 (c) of the Revenue Act of 1918 provides:

There shall be deducted from invested capital as above defined a percentage thereof equal to the percentage which the amount of inadmissible assets is of the amount of admissible and inadmissible assets held during the taxable year.

In making up its balance sheets the petitioner showed as a liability the difference between the amount billed on uncompleted contracts and the incurred costs on such contracts. It is the contention of the petitioner that this was in error, and that in place thereof the petitioner should have shown as an asset the entire amount billed on uncompleted contracts, and, as a liability, the incurred costs.

With respect to this contention it should be noted that the entire amounts billed on uncompleted contracts appear in the balance sheets as assets either as " accounts receivable " or as " cash " or some other asset. The petitioner seeks to pad its balance sheet by adding to the asset side a certain amount representing the incurred costs, and to add a like amount to the liability side. It is the contention of the Commissioner that, if such an addition is made, the petitioner is in fact duplicating its admissible assets and that under the statute there is no provision for such deduction.

In our opinion the contention of the Commissioner upon this point is entirely correct. The original balance sheets were properly made out. Every asset of the company was listed on the asset side of the balance sheet. We see no warrant of law for increasing those assets in any particular.

6. *Loss sustained on the sale of Prepayment Car Sales Co. stock in 1918.*—As a result of litigation in 1915, the patents owned by the Prepayment Car Sales Co. were adjudged invalid. The market price of the stock of the company declined very rapidly. In 1918 the petitioner sold its 4,000 shares of the stock of that company, which had a cost and a fair market value on March 1, 1913, of $300,416.80, for $5,000. The Commissioner allowed the petitioner the deduction of a loss of $210,595.94. It is the contention of the petitioner that the loss sustained was $433,807.49.

We have found that the cost and the March 1, 1913, value of the stock was $300,416.80. The loss sustained upon the sale in 1918 was, therefore, that amount less $5,000, or $295,616.80.

7. *Whether the petitioner is entitled to a determination of its profits taxes for the year 1918 under the provisions of section 328 of the Revenue Act of 1918.*—The petitioner advanced no arguments in favor of its claim that its tax for the year 1918 should be determined under the provisions of section 328. We are of the opinion, in view of the findings made herein, that there are no features of

abnormality of income or invested capital which warrant such consideration.

> *Judgment will be entered on 15 days' notice, under Rule 50.*